PD-0401-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/8/2015 4:07:44 PM
Accepted 5/12/2015 1:45:51 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-0401-15

# *State of Texas, Appellee,*
# *v.*
# *Marcus Lee Holmquist, Appellant.*

**On Discretionary Review from
No. 05-13-01388-CR
Fifth Court of Appeals, Dallas**

**On Appeal from No. CR13-0496
County Court at Law, Rockwall County**

# Petition for Discretionary Review

**Patrick Short
603 White Hills Drive
Rockwall, Texas 75087
Phone: 972-771-1441
Fax: 972-771-0377
patrick@patrickshort.com
Texas Bar No. 21216900
Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

May 12, 2015

ABEL ACOSTA, CLERK

*ORAL ARGUMENT REQUESTED*

## Identity of Parties, Counsel, and Judges

**Marcus Lee Holmquist**, Appellant

**Patrick Short, Attorney for Appellant at Suppression Hearing and on Appeal,** 603 White Hills Drive, Rockwall, Texas 75087, phone (972) 771-1441, fax (972) 771-0377, email: patrick@patrickshort.com

**State of Texas, Appellee.**

**Kenda Culpepper, Rockwall County District Attorney, Attorney for Appellee,** 1111 E. YellowJacket Lane Suite 201, Rockwall, Texas 75087, phone (972) 204-6800, fax (972) 204-6809.

**Craig Stoddart, Rockwall County Assistant District Attorney, Appellate Division, Attorney for Appellee on Appeal**, 1111 E. YellowJacket Lane Suite 201, Rockwall, Texas 75087, phone (972) 204-6800, fax (972) 204-6809.

**Jennifer Barnes Molina, Rockwall County Assistant District Attorney, Attorney for Appellee at Suppression Hearing,** 1111 E. YellowJacket Lane Suite 201, Rockwall, Texas 75087, phone (972) 204-6800, fax (972) 204-6809.

**Hon. Brian Williams, Presiding Judge at Suppression Hearing, Rockwall County Court at Law,** 1111 E. YellowJacket Lane Suite 403, Rockwall, Texas 75087, phone (972) 204-6412, fax (972) 204-6419.

# Table of Contents

Identity of Parties, Counsel, and Judges.................................................. 2

Table of Contents............................................................................. 3

Table of Authorities ......................................................................... 5

Statement Regarding Oral Argument ................................................... 8

Statement of the Case....................................................................... 9

Procedural History........................................................................... 11

Questions or Grounds for Review ....................................................... 13

Argument ...................................................................................... 14

Question for Review One: In violation of the Fourth and
Fourteenth Amendments of the United States Constitution, the
Court of Appeals erred when it affirmed the trial court's
denial of Appellant's motion to suppress evidence because at
the time the officer observed the traffic violation, the detaining
officer had allowed the violation to go stale, therefore, the stop
was not effected within a reasonable time and distance. ................................. 14

Question for Review Two: Does a traffic control device (traffic
light) controlling the inner-most designated turn-only lane
supersede the statutory requirement of illuminating a turn
signal pursuant to Texas Transportation Code Section 545.104
when the driver is less than two car lengths (clearly within 100
feet and not moving nor parked) from an intersection,
stationary and awaiting the traffic control device's instruction
on when to proceed through the designated turn? ............................................ 26

Conclusion and Prayer...................................................................... 29

Certificate of Service ....................................................................... 31

**Certificate of Compliance with Tex. Rule App. Proc. 9.4** ................................. 32

**Appendix A:** Findings of Fact and Conclusions of Law

**Appendix B:** Judgment and Opinion of the Court of Appeals in *Holmquist v. State*, No. 05-13-01388-CR, 2015 WL 500809 (Tex. App. Feb. 5, 2015) (Not designated for publication).

## Table of Authorities

**Cases**

*Alabama v. White*, 496 U.S. 325 (1990) ........................................................ 15, 17

*Amador v. State*, 275 S.W.3d 872 (Tex. Crim. App. 2009) .................................. 21

*Arizpe v. State*, 308 S.W.3d 89 (Tex. App. San Antonio

2010, *no pet.*) ...................................................................................... 16, 17

*Armstrong v. State*, 550 S.W.2d 25 (Tex. Crim. App. 1977) ................................. 17

*Brother v. State*, 166 S.W.3d 255 (Tex. Crim. App. 2005) ............................ 16, 24

*Brown v. Texas*, 433 U.S. 47 (1979) ................................................................... 16

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) ............................................... 16

*Corbin v. State,* 85 W.W.3d 272 (Tex.Crim.App. 2002) ....................................... 19

*Crittenden v. State*, 899 S.W. 2d 668 (Tex.Crim.App. 1995) .............................. 20

*Florida v. Royer*, 460 U.S. 491 (1983) ............................................................... 16

*Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005) ................................. 15, 17

*Garcia v. State*, 43 S.W.3d 527 (Tex. Crim. App. 2001) ......................... 15, 17, 19

*Goudeau v. State*, 209 S.W.3d 713 (Tex. App. Houston [14th Dist.]

2006, *no pet.*) ............................................................................................ 27

*Kelly v. State*, 721 S.W.2d 586 (Tex. App. Houston [1st Dist.]

1986, *no pet.*). ........................................................................................... 16

*Livingston v. State*, 731 S.W.2d 744 (Tex. App. Beaumont 1987, pet. ref.) ......... 16

*Martinez v. State*, 348 S.W.3d 919 (Tex. Crim. App. 2011) ........................ 15, 17

*Pesina v. State*, 676 S.W.2d 122 (Tex. Crim. App. 1984) ..................................... 18

*Pham v. State*, 175 S.W.3d 767 (Tex. Crim. App. 2005) ............................... 21, 22

*Rhodes v. State*, 945 S.W.2d 115 (Tex. Crim. App. 1997),

*cert. denied*, 522 U.S. 894 (1997) ................................................................ 15, 17

*State v. Bryant*, 161 S.W.3d 758 (Tex. App. Fort Worth 2005, *no pet.*) ............... 16

*State v. Cullen*, 227 S.W.3d 278 (Tex. App. San Antonio 2007, *pet. ref.*) ............ 18

*State v. Dixon,* 151 S.W.3d 271 (Ct. App. – Texarkana 2004) ................... 19, 20, 23

*State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006) ..................... 19, 20, 24, 26

*United States v. Granado,* 302 F.3d 421 (5th Cir. 2002) ...................................... 27

*Wehring v. State*, 276 S.W.3d 666 (2008) ............................................................ 28

*Zayas v. State*, 972 S.W.2d 779 (Tex. App. Corpus Christi

1998, *pet. ref.*) ............................................................................................ 15, 17

## Constitutions

U.S. Const. Amend. IV ................................................................................... *passim*

U.S. Const. Amend. XIV ................................................................................. *passim*

Tex. Const. Art. 1, § 9 ................................................................... 9, 11, 16, 20

## Statutes and Rules

Tex. Code Crim. Proc. Art. 14.01 ........................................................................ 22

Tex. Code Crim. Proc. Art. 38.23 ................................................... 9, 11, 21, 22

Tex. Pen. Code § 49.04 .................................................................. 11

Tex. Rule App. Proc. 9.4 .............................................................. 32

Tex. Rule App. Proc. 9.5 .............................................................. 31

Tex. Rule App. Proc. 68.4 ............................................................. 8

Tex. Rule App. Proc. 68.11 ........................................................... 31

Tex. Rule Evid. 201 ..................................................................... 22

Tex. Transp. Code § 544.004 ..................................................... 28, 29

Tex. Transp. Code § 544.009 ..................................................... 28, 29

Tex. Transp. Code § 545.101 ..................................................... 28, 29

Tex. Transp. Code § 545.104 ......................................... 24, 26, 28, 29

Tex. Transp. Code § 545.151 ..................................................... 28, 29

Tex. Transp. Code § 545.363 ........................................................ 18

## Statement Regarding Oral Argument

Appellant requests oral argument. *See* Tex. Rule App. Proc. 68.4(c). This is a meritorious appeal of a criminal case. Appellant believes that the facts and legal arguments are adequately presented in this petition. However, should this Court determine that its decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument.

**To The Honorable Judges of the Court of Criminal Appeals:**

Marcus Lee Holmquist, Appellant, respectfully submits this petition for discretionary review:

## Statement of the Case

This petition for discretionary review requests that this Court review the judgment and opinion of the Fifth Court of Appeals in *Holmquist v. State*, No. 05-13-01388-CR, 2015 WL 500809 (Tex. App. Feb. 5, 2015) (Not designated for publication).

Appellant was stopped by a City of Rockwall police officer Benton Brumit in a marked patrol car on March 13, 2013 at about 12:26 a.m. at the 1100 block of Ridge Road about 1.6 miles north of Interstate 30. (RR2, 5-7, 16.)[1] Such stop violated the Fourth and Fourteenth Amendments of the United States Constitution, and/or Article 1, Section 9 of the Texas Constitution and the statutory violation pursuant to Texas Code of Criminal Procedure Article 38.23.

The trial court erred by denying Appellant's motion to suppress evidence because based upon the evidence (1) there was not reasonable suspicion that Appellant committed any crime or driving violation that was not attenuated from

---

[1] The Clerk's Record, is comprised of three volumes: Clerk's Record, Revised Clerk's Record and Supplemental Clerk's Record. Apparently the Clerk's Record was numbered incorrectly so referenced in this Petition will be "RCR" and "CR-Supp." followed by the page number of the Clerk's Record. The Reporter's Record, comprised of four volumes, is referenced as "RR" followed by the volume number and the page number, so page 2 of volume 2 is referenced as "RR2, 2."

the only violation, and (2) the original traffic violation became stale, ignored and useless because it was disregarded in the hopes that reasonable suspicion to stop the defendant's vehicle for driving while intoxicated would develop, but it did not.

## Procedural History

This case is an appeal of an Original Order Granting Community Supervision, Judgment and Sentence, imposed on August 29, 2013 in Rockwall County Court at Law under Cause Number CR13-0496. (RCR, 21-23). Appellant was charged by information for Driving While Intoxicated under Texas Penal Code § 49.04. (RCR, 7). The information alleged that on or about the March 13, 2013, Appellant operated a motor vehicle in a public place while not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more such substances, or any other substance into his body, or by having an alcohol concentration of at least 0.08.

## Motion to Suppress

Prior to trial, Appellant filed a motion to suppress evidence, asking the court to suppress the following evidence: (1) a breath test result, (2) HGN results, (3) field sobriety test results, (4) any video depicting events transpiring after the stop, (5) video and opinions of the arresting officer found to be formed after the stop, (RCR, 9). U.S. Const. Amend. IV & XIV; Tex. Const. Art. 1, §9; Tex. Code Crim. Proc. Art. 38.28. The court denied Appellant's Motion to Suppress evidence on August 21, 2013. (RCR, 13).

The trial court sentenced Appellant on August 29, 2013 to 90 days in the Rockwall County Jail, but suspended the sentence for 12 months placing him on community supervision. (RCR, 21-23; RR3, 6).

On August 22, 2013 Appellant filed Defendant's Request for Findings of Fact and Conclusions of Law. (RCR, 17-18, 29-30). This Court abated Appellant's appeal and the trial court's findings of fact and conclusions of law were filed on April 7, 2014. (*See* Appendix A).

## Court of Appeals

Appellant appealed the conviction. On February 5, 2015, the Fifth Court of Appeals affirmed the conviction. *Holmquist v. State*, No. 05-13-01388-CR, 2015 WL 500809 (Tex.App. Feb. 5, 2015). (*See* Appendix B). This petition for discretionary review follows.

## Questions or Grounds for Review

The first question is whether, in violation of the Fourth and Fourteenth Amendments of the United States Constitution, the Court of Appeals erred in affirming the trial court's denial of Appellant's motion to suppress because at the time the officer observed the traffic violation, the detaining officer allowed the violation to go stale, therefore, the stop was not effected within a reasonable time and distance.

The pages of the record in which the first matter complained of are found throughout the Reporter's Record and Clerk's Record; especially on page 13 of the Revised Clerk's Record.

The second question is whether a traffic control device controlling the inner-most designated turn-only lane supersedes the statutory requirement of illuminating a turn signal pursuant to the Texas Transportation Code when the driver is less than two car lengths from an intersection, stationary and awaiting the traffic control device's instruction on when to proceed?

The pages of the record in which the second matter complained of are also found throughout the record; especially on the following pages: Reporter's Record Volume 2, pages 1-9, 11, 14, 17, 20, 27, 32, 36-37; and Volume 4, pages 2-4.

## Argument

**I. Question for Review One:** In violation of the Fourth and Fourteenth Amendments of the United States Constitution, the Court of Appeals erred when it affirmed the trial court's denial of Appellant's motion to suppress evidence because at the time the officer observed the traffic violation, the detaining officer had allowed the violation to go stale, therefore, the stop was not effected within a reasonable time and distance.

**A. The opinion of the Court of Appeals ignores the facts and the law.**

In affirming the trial court below, the Court of Appeals relied entirely too much on the implicit findings the trial court supposedly made in their denial of Appellant's motion to suppress. The Court of Appeals did not discuss whether reasonable justification existed for the officer's delay in effecting a traffic stop in this case. Rather, they determined that the record and the trial court's findings "support an implied finding that there was reasonable justification for Brumit's delay." App. B, pg. 11.

The Court of Appeals' opinion further states, in concluding the Appellant committed a traffic violation, the "trial court implicitly found a delay of 1.6 miles in stopping Holmquist after Brumit's observation of the traffic violation was not unreasonable." *Id.* Again, the Court of Appeals is basing their opinion in this case on determinations they claim are implied by findings made by the trial court below.

The Court of Appeals further makes the conclusory determination that there was reasonable suspicion Appellant committed a traffic offence. As shown below, there was no actual violation of the transportation code to constitute "criminal activity." *See Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005) (Reasonable suspicion exists when, based on the totality of the circumstances, the officer has articulable facts, when combined with rational inferences, lead the officer to conclude a person is, has been, or soon will be, engaged in criminal activity).

When this Court gages the reasonableness of the officer's actions from his perspective as a reasonable officer *at the scene*, and not with the advantage of hindsight, there is no unusual activity on the part of the Appellant in this case. *See Garcia v. State*, 43 S.W.3d 527, 531-532 (Tex. Crim. App. 2001); *Rhodes v. State*, 945 S.W.2d 115, 117-118 (Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 894 (1997); *Zayas v. State*, 972 S.W.2d 779, 790 (Tex. App. Corpus Christi 1998, *pet. ref.*); *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011); *Alabama v. White*, 496 U.S. 325, 330-332 (1990); U.S. Const. Amend. IV and XIV.

The Court of Appeals ignored all of evidence and case law provided to them in making their determination in this case. Therefore, the Court of Appeals erred in affirming the trial court's decision to deny Appellant's motion to suppress. Thus, Appellant asks the Court of Criminal Appeals to grant discretionary review.

**B. Reasonable suspicion to stop a motorist in general**

Vehicles are entitled to the same basic Fourth Amendment protection against unreasonable search and seizure as other personal property. *Coolidge v. New Hampshire*, 403 U.S. 443, 456-64 (1971); *Livingston v. State*, 731 S.W.2d 744, 747 (Tex.App. Beaumont 1987, *pet. ref.*). In order to stop and detain a motorist without running afoul of the Fourth and Fourteenth Amendments and Texas Constitution Article 1, § 9, a police officer must have reasonable suspicion based upon specific and articulable facts that the motorist engaged in or is about to engage in criminal activity. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). These facts must amount to more than a mere suspicion, but need not be based upon an officer's personal observations. *Id.* at 258-59; *Arizpe v. State*, 308 S.W.3d at 91-92.

An encounter is not considered a "seizure'" for Fourth Amendment purposes, and there is no investigative detention unless a detention has occurred. *Florida v. Royer*, 460 U.S. 491, 497-498 (1983); *State v. Bryant*, 161 S.W.3d 758, 761 (Tex.App. Fort Worth 2005, *no pet.*). An investigative detention is permitted only if the officer has a reasonable suspicion, based on objective facts, the individual is involved in criminal activity. *See Brown v. Texas*, 433 U.S. 47, 52 (1979); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex.App. Houston [1st Dist.] 1986, *no pet.*). Reasonable suspicion is suspicion founded on articulable facts that, in light of the officer's experience and general knowledge, lead to the reasonable

conclusion that criminal activity is being conducted and the detained person is connected with the activity. *Armstrong v. State*, 550 S.W.2d 25, 30-31 (Tex. Crim. App. 1977); *Alabama*, 496 U.S. at 331-32.

Reasonable suspicion is an objective determination, so the particular motivation of the officer for making an investigatory detention does not matter if there was an objectively reasonable basis for the officer's actions. *See Garcia*, 43 S.W.3d at 531. The reasonableness of an officer's actions is judged from the perspective of a reasonable officer *at the scene*, without the advantage of hindsight; allowances are made under rapidly changing circumstances when officers must make quick decisions. *Id.* at 531-532; *Rhodes*, 945 S.W.2d at 117-8; *Zayas*, 972 S.W.2d at 790.

In *Martinez*, the Court of Criminal Appeals held "[T]he determination of reasonable suspicion is dependent upon both the content of the information known to the officer and its degree of reliability. . . .Those facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Martinez*, 348 S.W.3d at 923; *Alabama*, 496 U.S. at 330. This determination is made by objectively considering the "totality of the circumstances," which includes both the quantity and quality of information. *Id.*, *Ford*, 158 S.W.3d at 492-93; *Arizpe*, 308 S.W.3d

at 92; *State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App. San Antonio 2007, *pet. ref.*); *Pesina v. State*, 676 S.W.2d 122, 127 (Tex. Crim. App. 1984).

Officer Brumit had no reasonable suspicion to stop Appellant because (1) the stated reason for the stop diminished and became stale, and (2) Appellant did not commit any traffic violation in Brumit's presence that justify being pulled over before or after the ostensible traffic violation for "failure to signal turn" became stale. The record does not reflect that Appellant was given a traffic citation once stopped.

## C. Speed was not the reason for the stop.

The officer testified that going 30 in a 45 miles per hour speed zone was not a traffic violation and understood there was not reasonable suspicion to stop the vehicle(s) based on their speed. (RR2, 10, 12, 22). He also testified that Appellant and the vehicle in front of him were not impeding traffic. (RR2, 22-23). The officer unequivocally testified in relation to the speed of the vehicle(s): "It [the speed] wasn't the reason for the stop, correct." (RR2, 36). Therefore, the vehicle(s) were not in violation of the statute governing minimum speed. Tex. Transp. Code § 545.363(a)(b).

Thus, the totality of the circumstances test is not in issue in this case. There is no evidence in the record supporting a reasonable suspicion based upon specific and articulable facts that Appellant engaged in or is about to engage in criminal

activity *after the left hand turn violation.* Therefore, this fact precludes the totality of the circumstances test being used in this case because the "totality" of the reason for the stop was the mere traffic violation.

**D. The Officer's delay was unreasonable.**

Despite the decision of the Court of Appeals, there is no evidence in the record that supports the stop based on the objective reasonable officer at the scene standard. It is not reasonable to believe if a police officer sees a traffic violation he would not pull them over for the violation within a reasonable time and distance. *See Garcia*, 43 S.W.3d at 531. It clearly is the factor in this case. In *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006) the court citing the lower court states:

> "It is also clear that the trial court did not believe the officer's allegations that they pulled Appellee over because he committed a traffic offense. The fact that they waited for over three miles after the alleged violation to stop Appellee diminishes the credibility of their claim that they stopped him for an unlawful turn…the trial judge was in effect saying, "If you really thought the driver had committed a traffic offense, then why did you wait so long before pulling him over?" *Id.* at 591.

In *State v. Dixon,* 151 S.W.3d 271 (Ct.App.–Texarkana 2004) citing *Corbin v. State,* 85 S.W.3d 272, 278 (Tex.Crim.App. 2002) the court noted:

> "[T]he officer had followed the car for over a mile before stopping the driver. Although the court did not make its decision based solely on the distance or length of time the officer followed the vehicle, that is clearly a matter to be considered when a court is deciding whether a traffic stop is reasonable." *Dixon*, 151 S.W.3d at 274.

The court went on to say, "[w]e do not hold that a delay of this distance will

always be unreasonable. In each such instance, the court should properly consider all of the factors surrounding the stop." *Id.* at 275.

In the instant case, the officer's delay is clearly unreasonable. Is it reasonable to believe the delay was so that a second back-up officer could come to assist Officer Brumit in pulling two vehicles over for "failure to signal turn."?

The delay goes to the credibility of the reason for the stop. *Dixon*, 206 S.W.3d at 591. This case is not an objectively valid traffic stop and is therefore unlawful even if the officer did have an ulterior motive based on the record before this court. *Crittenden v. State*, 899 S.W. 2d 668, 674 (Tex.Crim.App. 1995). This is an "each such instance" case because this officer by his testimony precludes a pretext stop analysis under *Crittenden*, which would have been legal under Texas Constitution Article I, § 9. Instead this officer testifies and excludes that he followed both vehicles (one with Appellant driving) out of the Pizza Getti parking lot. Or, that he has memory of such. Yet, when he radios for back-up to pull *not* one vehicle over for a traffic violation but *two* vehicles, his own radio call tells what he doesn't remember—that he might have "two of them." Not two drivers who failed to signal their left hand turns? The officer says two, "10-55s;" two DWI suspects. This is the exact circumstance that *Crittenden,* and Justice Baird's dissenting opinion seemed to address regarding Texas Constitution Article I, § 9. Especially given that the trial court did not make a finding on the officer's

credibility—the court's is silent as to the credibility of the officer's testimony in the instant case. App. A.

**E. The State has the burden to prove reasonableness of the initial stop.**

The burden in this case is on the State to prove the reasonableness of the seizure, which was the initial stop. A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The defendant carries this burden simply by establishing that the seizure occurred without a warrant, then the burden shifts to the State to prove the reasonableness of the seizure. *Id.* The stop of defendant by the officer clearly was without a warrant,[2] so the State now has the burden. However, the State cannot meet it.

In addition, a defendant who moves for suppression under Texas Code of Criminal Procedure Article 38.23 due to the violation of a statute has the burden of producing evidence of a statutory violation. *Pham v. State*, 175 S.W.3d 767, 772 (Tex.Crim.App. 2005). When the defendant meets this burden, the State bears the burden to prove compliance with the Statute. *Id.* Article 38.23(a) provides that "[N]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution

---

[2] Stipulated at the beginning of the motion to suppress hearing. (RR2, 4).

or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Art. 38.23(a). Article 38.23(b)'s good-faith exception does not apply because no warrant is at play here. Tex. Code Crim. Proc. Art. 38.23(b). Because Appellant will show that there was such a delay in the stop, i.e. a stale violation, no offense occurred in the presence of the officer justifying the delayed stop, under Texas Code of Criminal Procedure, the warrantless stop and subsequent arrest of Appellant was illegal. Tex. Code Crim. Proc. Art. 14.01. Thus, Appellant met his burden of producing evidence of a statutory violation; the State must now prove compliance with Article 14.01. *Pham*, 175 S.W.3d at 772; Tex. Code Crim. Proc. Art. 38.23(a).

**F. The State cannot prove compliance with Article 14.01.**

If the only purpose for the delayed stop was so that the officer could be safe, why didn't he pull Appellant over in the most well lit area of Rockwall County, Texas—the McDonalds, Arby's, Chevron Gas station area, immediately next to Interstate 30—to cite him for the traffic citation? The officer could have called for a back up unit to come while the detaining officer waited in his patrol vehicle until back up arrived. The area the officer chose to stop both vehicles is considerably darker—behind the old Government Center at 1101 Ridge Road.

Appellant requests this court take judicial notice pursuant to Texas Rules of Evidence 201 of the two areas recited in the immediately preceding paragraph as to

the lighting conditions. (*See* State's 1). There are not many more secluded and darker areas in Rockwall than where the officer pulled Appellant over. There is nothing that interfered with the officer's ability to stop Appellant's vehicle earlier. *Dixon,* 151 S.W. 3d at 274.

Going slow is evidence of prudent driving as it is evidence of a "concern" as the conflicted testimony of the officer states. (RR2, 38). Nevertheless, the officer testified that the slow driving was a factor in vehicle's detention. (RR2, 10, 12, 22-23). Nowhere in the record does it show the officer intended to give a traffic citation to Appellant, but only that what he observed was a traffic violation.

If a lawful stop can become unreasonable for taking too long, the converse of that can also be true—not effectuating a vehicle within a reasonable time and reasonable distance for a traffic violation. It is one thing to argue reasonable suspicion based on articulable facts to pull one vehicle over for DWI based on not putting a left hand turn signal indicator on. But to say that you have two "10-55s" based on not putting a left hand turn signal indicator on is remarkable. The only way you would know that is if you saw the detainees leave an establishment that serves alcohol, assumed that they drank alcohol while there and pulled them over to see if your hunch or speculation is right. This the law does not allow. The officer cannot rely on mere suspicion or a hunch. *Brother* at 258-259.

If in fact the officer did not have Appellant under surveillance, following the Appellant/defendant(s) out of the Pizza Getti eating establishment, why does his vehicle move so quickly out of the parking lot of where Pizza Getti is located? And, what articulable facts give rise to reasonable suspicion after the initial "failure to signal turn" when evaluating the testimony of the officer and a review of the in-car video cam?

A review of the record and video cam demonstrates the diminishment of the "failure to signal turn" being the reasonable suspicion to detain Appellant; because, "[i]n order to render lawful a motor vehicle stop for a traffic offense, must the stop be effected within a reasonable time and a reasonable distance after the alleged violation." The *Dixon* court answered "**yes**." *Dixon,* 206 S.W.3d at 592.

If drivers commit a traffic violation, cite them as soon as practicable—not 1.6 miles and three minutes and six seconds (3:06 min./sec.) later when your DWI investigation doesn't produce driving facts that make your investigation stronger. This officer's delay in detaining the Appellant/Defenants' for/their ostensible violation of Tex. Transportation Code Section 545.104(a)—it could not be for 545.104(b) because there is no evidence to indicate how many feet they did not continuously signal before the turn from the designated turn only lane—shows that his reason for stopping became more and more stale as the vehicle(s) passed McDonald's, Culver's, White Hills Drive, Yellowjacket Lane, and the railroad

tracks crossing Ridge Road. This officer drove effectively for 6 laps (1/4 mile per lap) around any regulation high school track in Texas, before he decided to detain Appellant and the vehicle in front of Appellant/Co-Defendant for "Failure to Signal Turn."

**II. Question for Review Two:** Does a traffic control device (traffic light) controlling the inner-most designated turn-only lane supersede the statutory requirement of illuminating a turn signal pursuant to Texas Transportation Code Section 545.104 when the driver is less than two car lengths (clearly within 100 feet and not moving nor parked) from an intersection, stationary and awaiting the traffic control device's instruction on when to proceed through the designated turn?

In affirming the decision of the trial court, the Court of Appeals concluded that as a matter of law it is a violation of the transportation code for a person making a turn from a turn-only lane to do so without signaling. *See* App. B. This holding is based upon the language of Texas Transportation Code Section 545.104(b), which they claim is clear and unambiguous. *See* Tex. Transp. Code Ann. § 545.104(b). The Court of Appeals states that there are no exceptions for situations in which there is only one direction to turn. App. B, pg. 8. However, the Court of Appeals did not discuss that, based on an opinion from the Court of Criminal Appeals discussed below, the trial court is given some discretion in this matter.

In *Dixon v. State,* the Court of Criminal Appeals found it to be in the discretion of the trial court to find that no violation occurred when a motorist failed to use a turn signal when turning from a turn only lane. *Dixon,* 206 S.W. 3d at 591. In support, the court stated: "The trial judge made it clear that he believed the turns made by Appellee were lawful, so no traffic violation was committed and the stop was not valid." *Id.*

Additionally, the *Dixon* court did not determine whether such failure to signal was a violation of the Texas Transportation Code.

Clearly, the record before this court demonstrates that the findings of fact by the trial court show that the officer was in the Pizza Getti parking lot (App. A, FF#1), that Appellant, the "together vehicle" with Appellant (if front of Appellant) and Officer Brumit were all stationary in a left-hand turn-only lane (*Id.*, FF#2), that Appellant's only legal movement was the left hand turn (*Id.*, FF#3), there was a traffic controlled device (a traffic light) (*Id.*, FF#4), Officer Brumit incorrectly, based on *Dixon*, testified that a left-hand turn from the left hand turn-only lane without activating defendant's left-hand turn signal is a class "C" traffic code violation (*Id.*, FF#5), and that *the traffic violation* Officer Brumit stopped Appellant for was "fail to signal turn" which violates *Dixon* (*Id.*, FF#6), and there were no further traffic violations after the illegal left hand turn made by [Appellant]. (*Id.*,, FF#11). The lead vehicle was stopped by a second Rockwall Police Officer on the same basis that Appellant was stopped—"fail to signal turn". (*Id.*, FF#12). So, not only was Appellant stopped, but so was another individual, both on the basis of an officer's honest but mistaken understanding of the traffic law that prompted a stop is **not** an exception to the reasonable suspicion requirement. *Goudeau v. State,* 209 S.W.3d 713, 716 (Tex. App. Houston [14[th] Dist.] 2006, no pet.); *U.S. v. Granado,* 302 F.3d 421, 423 (5th Cir. 2002).

Officer Brumit's testimony provides that the "reasonable suspicion" to stop Appellant was that Appellant "failed to signal turn." (RR2, 10, 29, 22; FF#5, 6).

Further, 545.104(a) and (b) of the Texas Transportation Code and its conflict with the Traffic Control Device, Section 544.004(a), like a traffic light that controls when to proceed through a designated turn only lane to turn are vague and ambiguous as it relates to operators of vehicles who enter a designated turn only lane that designates one's "intention to turn" direction by virtue of the lane designation itself, and for the operators who "intend" to turn right or left but enter the designated turn only lane less that 100 feet before the turn, are stationary and have no "movement" of their vehicle while being less than 100 feet before the turn. Therefore, Transportation Code Section 545.104(a) and (b) as applied to this Appellant's case is not clear and unambiguous. *Wehring v. State*, 276 S.W.3d 666, 669 (2008); *See also* conflicts with Tex. Transp. Code 544.009, 545.101(b) and 545.151(a)(1)(A).

It should also be noted, that it appears to Appellant, that this may be a case of first impression where there is an actual traffic control device, a designated turn-only lane and a turn made without illuminating a turn signal on video cam while actually in the traffic controlled, designated turn-only lane where there is no dispute as to the driver illuminating his turn signal. Appellant did not.

Nevertheless, based on the foregoing arguments and analysis, reasonable suspicion to stop Appellant's vehicle was neither legally reasonable nor justified.

## Conclusion and Prayer

The Court of Appeals erred when it affirmed the trial court's denial of Appellant's motion to suppress evidence because based upon the evidence, (a) the stop was predicated on a stale minor traffic violation and reasonable suspicion was not obtained again within a reasonable time and a reasonable distance after the stale violation occurred, and (b) the stop was predicated on the assumption that the vehicle that is stationary, in the turn only lane controlled by a traffic controlled device and less than two car lengths from the intersection but not moving, nor parked, cannot comply with Texas Transportation Code Section 545.104[3], as written, (c) the holdings in both *Dixon* decisions and their practical application to Texas vehicle operators.

For the reasons stated in this petition, Appellant respectfully prays this Court grant discretionary review, find that the Court of Appeals erred, reverse the judgment of the Court of Appeals, grant the relief requested in this petition, and remand this case back to the trial court for further proceedings.

---

[3] Also conflicts between Traffic Control Device, Tex. Transp. Code Sec. 544.004(a) and Tex. Transp. Code Secs. 544.009, 545.101(b), 545.151(a)(1)(A).

Respectfully submitted,

Patrick Short
603 White Hills Drive
Rockwall, Texas 75087
Phone: 972-771-1441
Fax: 972-771-0377
patrick@patrickshort.com
Texas Bar No. 21216900
Attorney for Appellant

**/s/ Patrick Short**

Patrick Short

## Certificate of Service

This certifies that on May 8, 2015, a true and correct copy of the foregoing document was forwarded to all counsel of record via the following: *See* Tex. Rule App. Proc. 9.5 (2014) and 68.11 (2014).

| 1. | Craig Stoddart<br>Assistant District Attorney<br>Rockwall, Texas<br>Appellate Section<br>1111 E. Yellowjacket Lane, Ste. 201<br>Rockwall, Texas 75087<br>cstoddart@rockwallcountytexas.com | ☐ By Fax<br>☐ By Certified Mail, RRR<br>☐ By First Class Mail<br>☐ By Hand-Delivery<br>☐ Email Delivery | |
| --- | --- | --- | --- |
| | | | |

/s/ Patrick Short

Patrick Short

## Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 4,500 words. *See* Tex. Rule App. Proc. 9.4(i)(2)(D). Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 3,815 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2014).

**/s/ Patrick Short**

Patrick Short

# APPENDIX "A"

FILED FOR RECORD
ROCKWALL CO, TEXAS

2014 APR -7 PM 3: 41

FILED IN
5th COURT OF APPEALS
ROCKWALL, TEXAS

4/7/2014 4:03:18 PM
LISA MATZ
BY _____ DEPUTY

| STATE OF TEXAS | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW |
| | § | |
| MARCUS LEE HOLMQUIST | § | ROCKWALL COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**FINDINGS OF FACT:**

1. At 12:21:42 a.m. Rockwall Police Officer Benton Brumit's ("Officer Brumit") patrol vehicle was positioned in the parking lot where a local restaurant named Pizza Getti is located and it serves alcoholic beverages. (RR2, 17, 5-20; 27, 10-13).

2. At approximately 12:22:16 a.m. on March 13, 2013, Officer Benton Brumit was in a marked patrol car facing east while directly behind defendant, and observed defendant's vehicle stationary in a left-hand turn-only lane and begin his left-hand turn in the left-hand turn only lane northbound, from the south service road of Interstate 30 onto Ridge Road in Rockwall, Texas. (RR2, 7.5-9; 8,25; 9.4-7; 20, 3-12; RR4, 4; *See* State's Ex. "1" and Def.'s Ex. "1" & "2").

3. Defendant(s) only legal movement for their vehicle(s) is to make a left hand turn. (RR2, 21, 9-12).

4. When the traffic light changed from red to green, defendant's vehicle and the vehicle immediately ahead of it continued through the green light and made a left-hand turn from the left turn-only lane onto Ridge Road from the south service road of Interstate 30 without activating their left hand turn signals. (RR2, 9,20-25; State's Exhibit "1").

5. Officer Brumit testified making a left-hand turn from the left hand turn-only lane without activating defendant's left-hand turn signal is a Class "C" Traffic Code violation. (RR2, 10, 1-5).

6. The traffic violation that defendant's vehicle was stopped for was "fail to signal turn." (RR2, 29, 22)

7. Defendant drove 30 miles per hour in a 45 mile per hour speed zone from the south service road of Interstate 30 on Ridge Road for a distance of approximately 1.6 miles before Officer Brumit activated his emergency overhead lights to stop defendant's vehicle. (RR2, 10, 15-20, 16, 17-19; 36, 2-9).

8. At 12:23:47 a.m. Officer Brumit calls for a backup unit to pull over the lead vehicle while he pulls over defendant's vehicle. (RR2, 37, 19-21).

9. Officer Brumit continued to follow the defendant while waiting for his cover officer to arrive before activating his emergency overhead lights to stop defendant's vehicle (RR2, 14, 22-25; 15, 1-4).

10. At 12:25:22 a.m. Officer Brumit illuminated his emergency lights to stop defendant's vehicle. (RR2, 39, 8-10).

11. There was no further traffic violation after the illegal left hand turn made by defendant. (RR2, 25, 5-8; 9, 20-25).

12. The lead vehicle was stopped by a second Rockwall Police Officer, Officer Norlin on the same basis that defendant was stopped—"fail to signal turn". (RR2, 14, 24-25; State's Exhibit "1").

13. At the time of the detention, neither Officer Brumit nor Officer Norlin had a warrant to detain or seize either vehicle. (RR2, 4, 18-22).

14. Officer Brumit identified defendant, Marcus Lee Holmquist in open court. (RR2, 7, 22-25).

## CONCLUSIONS OF LAW:

1. "The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013), citing *Terry v. Ohio*, 392 U.S. 1, 28 (1968), and *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

2. Detentions and arrests are Fourth Amendment seizures and therefore implicate Fourth Amendment protections. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). "[W]hen a seizure takes the form of a detention, Fourth Amendment scrutiny is necessary—it must be determined whether the detaining officer had reasonable suspicion that the citizen is, has been, or is about to be engaged in criminal activity." Id. (citations omitted).

3. A police officer lawfully conducts a temporary detention when he has reasonable suspicion that an individual is involved in criminal activity. *Balentine v. State*, 71 S.W.3d 527, 530 (Tex. Crim. App. 2002). Reasonable suspicion requires more than a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activitiy. *Ford,*

2

158 S.W.3d at 492 (citing *Garcia v. State*. 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). The reasonable suspicion determination is an objective one made by considering the totality of the circumstances, *Id*. at 492-93.

4. Making a left hand turn in a designated left hand turn only lane without illuminating the vehicle's left hand turn signal violates Texas Transportation Code section 545.104(a).

5. Based upon defendant's violation of the Texas Transportation Code 545.104(a), Officer Brumit's detention of defendant's vehicle was justified by reasonable suspicion.

**Judge Presiding**



# APPENDIX "B"

AFFIRMED; Opinion Filed February 5, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

No. 05-13-01388-CR

---

**MARCUS LEE HOLMQUIST, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law**
**Rockwall County, Texas**
**Trial Court Cause No. CR13-0496**

---

## OPINION

Before Justices Fillmore and Thomas, Retired[1]
Opinion by Justice Fillmore

After the trial court denied Marcus Lee Holmquist's motion to suppress evidence, he pleaded guilty to misdemeanor driving while intoxicated (DWI). The trial court sentenced him to ninety days' confinement and a $400 fine, suspended the sentence, and placed him on twelve months' community supervision. In two issues, Holmquist contends the trial court erred by denying his motion to suppress because a traffic-violation stop was not effected within a reasonable time and distance, and a traffic light controlling a turn-only lane superseded the statutory requirement of section 545.104 of the transportation code. We affirm the trial court's judgment.

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment. Justice Michael O'Neill was a member of the original panel and participated in the submission of this case; due to his retirement, he did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1(b).

## Background

Holmquist was charged with misdemeanor DWI. Prior to trial, Holmquist filed a motion to suppress contending his detention, arrest, seizure, and custody occurred without reasonable suspicion. Holmquist sought suppression of evidence obtained incident to and as a result of the allegedly unlawful arrest, custody, and seizure, including a breath test result, field sobriety test results, a video recording, and opinions of the arresting officer.

At the suppression hearing, Rockwall Police Department patrol officer Benton Brumit testified that at approximately 12:26 a.m. on March 13, 2013, he observed the vehicle driven by Holmquist in a left turn-only lane of an intersection without an activated turn signal. Brumit testified, and the video recording made by the camera in Brumit's patrol vehicle showed, that when the traffic light changed to green, Holmquist's vehicle and the vehicle in front of Holmsquist's vehicle made left-hand turns at the intersection without signals indicating the drivers' intention to turn left. Brumit testified turning left without signaling the intention to turn was a traffic violation for which he could write a traffic violation citation. Brumit turned left at the intersection and followed the vehicles, intending to stop both drivers for the traffic violation of failing to signal a left-hand turn.

Brumit noted the vehicles were traveling at approximately thirty miles per hour in a forty-five-miles-per-hour speed zone. Brumit testified the vehicles were not impeding traffic, and driving below the maximum speed limit did not constitute a traffic violation. However, in addition to the observed traffic violation of failing to signal a left turn, other factors such as the time of night, the proximity to establishments at which alcoholic beverages were served, and the vehicles traveling below the speed limit caused Brumit to believe the two drivers might be intoxicated.

In the interest of officer safety, Brumit prefers not to make simultaneous traffic stops of multiple vehicles by himself. Therefore, he radioed for another patrol unit to proceed to his location to assist him. When Brumit observed the arrival of the cover patrol unit driven by Officer Norlin, Brumit activated the emergency lights on his vehicle and stopped Holmquist's vehicle while relying on Norlin to stop the other vehicle. Brumit testified it was 1.6 miles from Holmquist's left turn to the point where Brumit activated the emergency lights on his patrol vehicle.

The trial court entered the following findings of fact:[2]

1.　At 12:21:42 a.m. Rockwall Police Officer Benton Brumit's . . . patrol vehicle was positioned in the parking lot where a local restaurant named Pizza Getti is located and it serves alcoholic beverages.

2.　At approximately 12:22:16 a.m. on March 13, 2013, [Brumit] was in a marked patrol car facing east while directly behind [Holmquist], and observed [Holmquist's] vehicle stationary in the left-hand turn only lane and begin his left-hand turn in the left-hand turn only lane northbound, from the south service road of Interstate 30 onto Ridge Road in Rockwall, Texas.

3.　Defendant(s) only legal movement for their vehicle(s) is to make a left hand turn.

4.　When the traffic light changed from red to green, [Holmquist]'s vehicle and the vehicle immediately ahead of it continued through the green light and made a left-hand turn from the left turn-only lane onto Ridge Road from the south service road of Interstate 30 without activating their left hand turn signals.

5.　[Brumit] testified making a left-hand turn from the left hand turn-only lane without activating [Holmquist]'s left-hand turn signal is a Class "C" Traffic Code violation.

6.　The traffic violation that [Holmquist]'s vehicle was stopped for was "fail to signal turn."

7.　[Holmquist] drove 30 miles per hour in a 45 mile per hour speed zone from the south service road to Interstate 30 on Ridge Road for a distance

---

[2] The trial court's references to record citations in its findings of fact are not included here.

of approximately 1.6 miles before [Brumit] activated his emergency overhead lights to stop [Holmquist]'s vehicle.

8. At 12:23:47 a.m. [Brumit] call[ed] for a backup unit to pull over the lead vehicle while he pulls over [Holmquist]'s vehicle.

9. [Brumit] continued to follow [Holmquist] while waiting for his cover officer to arrive before activating his emergency overhead lights to stop [Holmquist]'s vehicle.

10. At 12:25:22 a.m. [Brumit] illuminated his emergency lights to stop [Holmquist]'s vehicle.

11. There was no further traffic violation after the illegal left hand turn made by [Holmquist].

12. The lead vehicle was stopped by a second Rockwall Police Officer, Officer Norlin on the same basis that [Holmquist] was stopped—"fail to signal turn."

13. At the time of the detention, neither [Brumit] nor [Norlin] had a warrant to detain or seize either vehicle.

14. [Brumit] identified [Holmquist] in open court.

The trial court concluded as a matter of law that a person making a left-hand turn from a left-hand turn only lane without signaling the turn violates section 545.104 of the transportation code. Based upon Holmquist's violation of section 545.104, the trial court concluded Brumit's detention of Holmquist was justified by reasonable suspicion.

The trial court denied Holmquist's motion to suppress. Holmquist filed this appeal.

**Motion to Suppress**

In two issues, Holmquist asserts the arresting officer had no reasonable suspicion to stop him because "at the time the officer observed the traffic violation, the detaining officer had allowed the violation to go stale, therefore, the stop was not effected within a reasonable time and distance" and because the left-turn only traffic control device at the intersection superseded the requirement in section 545.104(b) of the transportation code that he signal his intention to turn left.

–4–

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). This same highly deferential standard applies regardless of whether the trial court granted or denied a motion to suppress evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes specific findings of fact, we determine whether the evidence supports those findings. *Id.* As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150.

*Reasonable Suspicion*

A routine traffic stop is similar to an investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 436–39 (1984). An investigative detention is a seizure. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd). Therefore, a traffic stop must be reasonable

–5–

under the United States and Texas Constitutions. *Id.*; *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.

To determine the reasonableness of an investigative detention, we must determine (1) whether the police officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). After an initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention. *Powell*, 5 S.W.3d at 377 (citing *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979)). Where the initial detention is based on a traffic violation, various combinations of factors will support a reasonable suspicion of criminal activity sufficient to justify a continued detention or further questioning unrelated to the traffic violation. *Id.*

Holmquist attacks the reasonableness of the investigative detention, that is whether Brumit had a reasonable suspicion to justify an investigative detention. *See Davis*, 947 S.W.2d at 242–43. Specifically, a police officer must have a reasonable suspicion that some activity out of the ordinary is occurring and some indication the unusual activity is related to crime. *Id.* at 244; *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). In making a reasonable suspicion determination, we disregard the subjective intent or motive of the officer making the stop and consider solely, under the

totality of the circumstances, whether there was an objective basis for the stop. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

An officer may lawfully stop and reasonably detain a person for a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *see also Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (decision to stop an automobile generally reasonable where officer has probable cause to believe traffic violation has occurred). Section 545.104 of the transportation code, titled "Signaling Turns; Use of Turn Signals," provides:

> (a) An operator shall use the signal authorized by Section 545.106[3] to indicate an intention to turn, change lanes, or start from a parked position.
> (b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

TEX. TRANSP. CODE ANN. § 545.104(a) & (b) (West 2011). The record includes Brumit's testimony at the hearing on the motion to suppress that Holmquist and the driver of the vehicle in front of him failed to signal their left-hand turns. The video introduced in evidence at the hearing shows that neither Holmquist nor the driver of the vehicle in front of him signaled an intention to turn left when approaching the intersection, while sitting stationary at the intersection awaiting the traffic light's indication to turn, or while making the left-hand turn. The trial court found that neither Holmquist nor the driver of the vehicle in front of him activated their left-hand turn signals, and Brumit testified that making the left-hand turn without signaling was a traffic code violation. The trial court found the traffic violation for which Holmquist was stopped was failing to signal his turn.

The trial court concluded as a matter of law that a person making a left-hand turn from a turn only lane without signaling the vehicle's turn violates section 545.104 of the transportation

---

[3] Section 545.106 of the transportation code, titled "Signals by Hand and Arm or by Signal Lamp," provides that, except in instances not applicable here, an operator of a motor vehicle required to give a stop or turn signal shall do so by using the hand and arm or lighting signal lamps approved by the Texas Department of Public Safety. TEX. TRANSP. CODE ANN. § 545.106(a) (West 2011).

code. Based upon Holmquist's violation of section 545.104, the trial court further concluded Brumit's detention of Holmquist was justified by reasonable suspicion.

## Failure to Signal Intent to Turn

Holmquist does not dispute that he did not signal his intention to turn left. He acknowledges he was within 100 feet of the intersection, where he was "awaiting" the traffic light's "instruction" on when to turn left. However, in his second issue, Holmquist contends the left turn-only traffic control device at the intersection superseded the requirement in section 545.104(b) that he signal his intent to turn left.

The trial court concluded as a matter of law that a person making a turn from a turn-only lane without signaling the turn violates section 545.104 of the transportation code. We agree.

The beginning point in statutory construction analysis is the statute's plain language. *Ex Parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). If a statute is clear and unambiguous, we apply the plain meaning of its words. *Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002). Only if the statute's plain language leads to absurd results or the language is ambiguous may a reviewing court consider extra-textual factors. *Whiteside*, 12 S.W.3d at 821.

Section 545.104(b) clearly and unambiguously requires a vehicle operator intending to turn right or left to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." *See* TEX. TRANSP. CODE ANN. § 545.104(b). The plain language of section 545.104(b) requires the driver to signal for a turn; it does not include exceptions for those situations in which there is only one direction to turn. *See Wehring v. State*, 276 S.W.3d 666, 668, 670 (Tex. App.—Texarkana 2008, no pet.) (section 545.104(b) requires driver to signal his

–8–

intent to turn, even from a turn-only lane).[4] "We cannot say that requiring the use of a turn signal while entering a turn-only lane and making the turn would lead to absurd results." *Id.*[5]

The court of criminal appeals did not determine in *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006), "that a turn signal is unnecessary when turning from a dedicated turn lane. Rather, the issue before the court was whether it was within the trial judge's discretion to decide whether to believe the arresting officer's assertion that he initiated the traffic stop for a traffic offense.'" *Mahaffey v. State*, 316 S.W.3d 633, n.32 (Tex. Crim. App. 2010) (quoting *Diaz v. State*, No. 03-08-00523-CR, 2009 WL 2195427, at *2, (Tex. App.—Austin July 23, 2009, no pet.) (mem. op.) (not designated for publication)). "Under the plain language of the Transportation Code, all movements right or left on the roadway must be made safely, but only some—*turns*, lane changes, or starts from a parked position—require a signal." *Id.* at 643 (emphasis added).

We conclude the language of section 545.104 of the transportation code is not ambiguous,[6] and the clear language of that statute required Holmquist to signal his intention to make a left-hand turn. The fact that Holmquist was in a turn-only lane did not provide an

---

[4] *See State v. Kidd*, No. 03-09-00620-CR, 2010 WL 5463893, at *2, *3 (Tex. App.—Austin Dec. 30, 2010, no pet.) (mem. op.) (not designated for publication) (defendant failed to continuously signal his intent to turn for not less than 100 feet before the turn and deputy was authorized to enforce the law and detain defendant for that traffic violation; evidence related to DWI seized after the lawful traffic stop was legally gathered and trial court erred in granting motion to suppress); *State v. Elias*, No. 08-08-00085-CR, 2012 WL 4392245, at *6-7 (Tex. App.—El Paso Sept. 26, 2012, pet. ref'd) (not designated for publication) (evidence supported reasonable inference defendant violated section 545.104(b) of the transportation code by failing to continuously signal his intention to turn for the last 100 feet of movement of the vehicle before the turn, initial detention supported by reasonable suspicion defendant committed traffic violation, and trial court erred by granting motion to suppress).

[5] *See Williams v. State*, No. 05-02-00314-CR, 2002 WL 31521373, at *2 (Tex. App.—Dallas Nov. 14, 2002, pet. ref'd) (not designated for publication) ("The plain language of [section 545.104] requires the driver to signal for a turn." Applying the plain language of section 545.104 does not lead to an absurd result. Section 545.104 "provides a clear, bright-line rule by which drivers of motor vehicle[s] and police officers charged with enforcing the laws may operate. If a turn is made from one street onto another, a signal is required."); *Kidd*, 2010 WL 5463893, at *2 (section 545.104(b) clearly and unambiguously requires driver intending to turn to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn," and does not lead to absurd results; applying language of section 545.104(b) provides reliable bright-line rule for drivers of motor vehicles and police officers charged with enforcing the law); *see also Diaz v. State*, No. 03-08-00523-CR, 2009 WL 2195427, at *2-3 (Tex. App.—Austin July 23, 2009, no pet.) (mem. op.) (not designated for publication) (under section 545.104(b), driver's failure to signal when turning from designated turn lane was traffic violation).

[6] Holmquist's counsel acknowledged at oral submission that even if section 545.104(b) of the transportation code is ambiguous, and even assuming no violation of section 545.104(b) had occurred, a traffic stop based on a mistaken understanding of the law can be reasonable under *Heien v. North Carolina*, 135 S. Ct. 530, 539, 540 (2014) (even assuming no violation of state law had occurred, police officer's mistaken understanding of the law was reasonable, and thus traffic stop was valid).

—9—

exception to the mandatory language of the statute. We resolve Holmquist's second issue against him.

## State Traffic Violation

In his first issue, Holmquist maintains the traffic stop was illegal under *Dixon*, because of an unreasonable amount of time and extended distance between the traffic offense and the traffic stop. In *Dixon*, the court of criminal appeals upheld the trial court's grant of a motion to suppress the fruits of a traffic stop that was based on a failure to signal a turn from a designated turn lane. The court of criminal appeals noted the trial court's findings of fact indicated the stop and search were generally unreasonable for reasons other than the unnecessary delay between turns made without signaling the intention to turn and the traffic stop, including that the turns were legal, the length of the detention and extent of the search conducted were excessive, and information on which the police based surveillance was not from a reliable source. *Dixon*, 206 S.W.3d at 590. The court also stated it was "clear that the trial court did not believe the officers' allegations that they pulled Appellee over because he committed a traffic offense," and the court of appeals "properly determined that it was within the discretion of the trial judge to decide whether to believe the officers' claim that they pulled Appellee over for a traffic offense." *Id.* at 591[7]

In *Dixon*, the court of appeals stated that in assessing whether a delay in time or distance between a traffic violation and a traffic stop is unreasonable, the court should properly consider all of the factors surrounding the stop. *Dixon v. State*, 151 S.W.3d 271, 275 (Tex. App.— Texarkana 2004), *aff'd*, 206 S.W.3d 587.[8] Here, Brumit attributed the delay in making the traffic

---

[7] *See also Carey v. State*, No. 05-08-01300-CR, 2010 WL 610924, at *2 (Tex. App.—Dallas Feb. 23, 2010, no pet.) (not designated for publication) (appellant misplaced his reliance on *Dixon*; "*Dixon* did not turn on the officer's delay between 'the amount of time or the distance between the traffic offense and the traffic stop.' Rather, the trial court did not believe that Dixon committed a traffic offense.") (citation omitted)

[8] *See also Powell v. State*, No. 03-10-00728-CR, 2011 WL 4357756, at *5 (Tex. App.—Austin Sept. 14, 2011, no pet.) (mem. op.) (not designated for publication).

–10–

stop to the fact that he intended to stop Holmquist's vehicle and the vehicle in front of Holmquist for failing to signal an intention to make a left-hand turn. Brumit testified that, in the interest of officer safety, he prefers not to make simultaneous traffic stops of multiple vehicles by himself. Brumit radioed for another patrol officer to provide back up and to make the traffic stop of the vehicle in front of Holmquist, and when the cover patrol unit arrived, Brumit made the traffic stop of Holmquist's vehicle.

The trial court concluded Holmquist committed a traffic violation, and detention of Holmquist after that traffic violation was justified by reasonable suspicion. In so concluding, the trial court implicitly found a delay of 1.6 miles in stopping Holmquist after Brumit's observation of the traffic violation was not unreasonable. The record, as summarized above, and the trial court's explicit findings, support an implied finding that there was a reasonable justification for Brumit's delay in effecting the traffic stop. In contrast to the trial judge's disbelief of the officer's testimony in *Dixon*, the trial court here believed Brumit, as demonstrated by its denial of the motion to suppress.

After reviewing the record, the evidence, when viewed objectively, supports the arresting officer's reasonable suspicion determination. Under the totality of the circumstances, we conclude the arresting officer articulated specific facts and circumstances which, taken together with rational inferences from those facts and circumstances, constituted reasonable suspicion that Holmquist had committed a traffic violation by failing to continuously signal his intention to turn for the last 100 feet of movement before he turned left, thus justifying the stop. *See* TEX. TRANSP. CODE ANN. § 545.104(b); *see also Garcia*, 827 S.W.2d at 944 (officer may lawfully stop and reasonably detain person for traffic violation).[9]

---

[9] *See also Kortemier v. Tex. Dep't of Pub. Safety*, No. 05-08-01182-CV, 2009 WL 1959256, at *2 (Tex. App.—Dallas July 9, 2009, no pet.) (mem. op.) (not designated for publication).

−11−

We conclude the trial court did not err by denying Holmquist's motion to suppress. We resolve Holmquist's first issue against him.

## Conclusion

Having resolved Holmquist's issues against him, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
131388F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MARCUS LEE HOLMQUIST, Appellant

No. 05-13-01388-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law, Rockwall County, Texas,
Trial Court Cause No. CR13-0496.
Opinion delivered by Justice Fillmore,
Justice Thomas, Retired, participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 5th day of February, 2015.